UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JOHN INGLES,

                Plaintiff,

-vs-                                                  Case No. 5:04-cv-465-Oc-10GRJ

LAKE COUNTY, FLORIDA, a political
subdivision of the State of Florida, LAKE
COUNTY BOARD OF COMMISSIONERS,
individually, and in their official capacity as
County Commissioners, TERRIE
DIESBOURG, individually, and in her
official capacity as Director of Customer
Service, Growth Management Department,
W. GREGG WELSTEAD, individually, and
in his official capacity as Deputy County
Manager, SANFORD MINKOFF,
individually, and in his official capacity as
County Attorney, DAVID WITTY,
individually, and in his official capacity as
an officer of the Code Enforcement
Department,

                Defendants.
_____

## **O R D E R**

This action is before the Court on the Defendants' Motion to Dismiss (Doc. 50), to which the Plaintiff has responded (Doc. 57). For the reasons that follow, the Court concludes that the Defendants' motion is due to be granted in all respects.

**Background and Facts**

The facts, according to the *Pro Se* Plaintiff's Second Amended Complaint (Doc. 38), are as follows. The Plaintiff "has pursued his right to earn a living by operating a fully licensed retail music store at two different locations in the 'Golden Triangle Urban Zone' in Lake County, Florida since 1995." On March 20, 2001, the Plaintiff became a tenant of property located at 15725 Old U.S. Highway 441 in Tavares, Florida. The Plaintiff intended to relocate his store, Hand-Me-Down Sound, to this location, but the Defendants refused to issue a retail sales occupational license to the Plaintiff because the property was not zoned for retail sales. The Plaintiff claims that because he was denied an occupational license and was prevented from opening his store in a building which was less expensive, he was forced to close down his store in June of 2002.

The Plaintiff's only local business competitor is a retail musical sales business operated by Randy Nolen under the name Music-N-Stuff. The Plaintiff alleges that as far as he can determine, Music-N-Stuff "has never substantively manufactured any products offered for wholesale distribution, nor been lawfully licensed as a wholesaler or manufacturer." Despite this fact, Music-N-Stuff was issued a retail sales occupational license on September 25, 2002 and relocated its sales showroom "into the heart of the alleged restricted area, approximately one-half mile from the Plaintiff's proposed location." The Plaintiff alleges that the license was issued because the application fraudulently classified Mr. Nolen's business as manufacturing rather than retail sales, the true nature

of the business.[1]  The Plaintiff alleges that a clerk for Lake County, Wayne Frank, altered Mr. Nolen's occupational license application and falsely represented that Mr. Nolen's business was a manufacturer.[2]  The Plaintiff complained to the Defendants that Music-N-Stuff was a retail establishment and not a manufacturer, and the Defendants simply told the Plaintiff to contact the Code Enforcement Board if he thought Music-N-Stuff was operating outside the conditions of its license.

On October 14, 2002, the Plaintiff attempted to obtain a retail sales occupational license, but his application was denied because according to Mr. Frank, retail sales were not allowed in the area where the Plaintiff wished to locate his store.  However, Mr. Frank suggested that if the Plaintiff lied on his application and stated that he wished to operate a manufacturing business, he could obtain zoning approval for a retail sales occupational license.  The Plaintiff refused to enter false information, and his application was denied on the grounds that the site was an "Employment Center" where retail sales were prohibited.  The Plaintiff claims that the denial of his application is irrational because the location does not meet the requirements for an "Employment Center" as established by Lake County policies and because retail sales are permitted in the "Golden Triable Urban Area" according to county regulations.

---

[1]   The Plaintiff also alleges in his Complaint that two other retail stores received occupational licenses (The Cat's Pajamas and the Smoke Shop) on the fraudulent grounds that they were manufacturers.

[2]   Mr. Frank is not a named Defendant in this case.

On October 22, 2002, the Plaintiff was shown a copy of the "Future Land Use Map" by the county's chief planner. The Plaintiff claims that the county justified its denial of his license based on the following language on the map: "Includes Industrial Zoning as of the date of Adoption." The Plaintiff alleges that the language on the map was unlawfully added by the Defendants without the legally required notice or advertisement, constituting a falsification of a public record in furtherance of fraud.

The Plaintiff attempted to resolve his concerns with the Defendants on multiple occasions, however, they continued to "insist on the incorrect interpretation of their own ordinances." The Plaintiff appealed the denial of his license application to the Board of Adjustment, and his case was subsequently dismissed on jurisdictional grounds because the Board had previously considered the matter (whether or not the location in question was an "Employment Center"). On January 6, 2003, the County Commission upheld the denial of the Plaintiff's occupational license. And on April 8, 2003, the Defendants provided the Plaintiff with a list of three ordinances which allegedly provided a basis for the denial of the Plaintiff's license. The Plaintiff alleges that none of the ordinances authorized the Defendants' actions and the information he was given was in fact false.

The Plaintiff's Second Amended Complaint contains twenty-eight Counts against the Defendants, including: (1) denial of procedural due process through the lack of a meaningful hearing; (2) deprivation of property without just compensation; (3) denial of equal protection of the law; (4) denial of substantive due process through the application of an arbitrary and capricious policy; (5) deprivation of liberty "to work at lawful calling"; (6)

denial of redress against the government; (7) discriminatory licensing practices under color of law; (8) neglect of duty to prevent unlawful acts; (9) obstruction of interstate commerce; (10) using the mail to facilitate wrongful activity; (11) restraint of free trade and interstate commerce in violation of 18 U.S.C. § 1962(c); (12) restraint of free trade and interstate commerce in violation of 15 U.S.C. § 1; (13) conspiracy to restrain free trade and interstate commerce; (14) establishment of a monopoly; (15) obstruction of justice; (16) mail fraud; (17) wire fraud; (18) altering an official map; (19) falsifying the public record; (20) document tampering; (21) changing an instrument of writing; (22) accepting value for influence; (23) solicitation of a false application; (24) official misuse of public office; (25) official misconduct; (26) conspiracy to conduct an enterprise through a pattern of racketeering activity; (27) conducting an enterprise through a pattern of racketeering activity; and (28) use of simulated legal process under color of law.

## Motion to Dismiss Standard

In passing on a motion to dismiss under Rule 12(b)(6), the Court is mindful that "[d]ismissal of a claim on the basis of barebones pleadings is a precarious disposition with a high mortality rate."[3] As the Supreme Court declared in Conley v. Gibson, a complaint should not be dismissed for failure to state a claim unless it appears "beyond doubt that the

---

[3] Int'l Erectors, Inc. v. Wilhoit Steel Erectors Rental Serv. 400 F.2d 465, 471 (5th Cir. 1968).

plaintiff can prove no set of facts in support of his claim that would entitle him to relief."[4] Thus, if a complaint "shows that the Plaintiff is entitled to any relief that the Court can grant, regardless of whether it asks for the proper relief," it is sufficiently plead.[5]

## Discussion

At the outset, it should be noted that the Court is wary of interfering with a local government's basic function to issue – or in this case, not to issue – an occupational license. As explained by the Florida Supreme Court:

> Clearly, the legislature, commissions, boards, city councils, and executive officers, by their enactment of, or failure to enact, laws or regulations, or by their issuance of, or refusal to issue, licenses, permits, variances, or directives, are acting pursuant to basic governmental functions performed by the legislative or executive branches of government. *The judicial branch has no authority to interfere with the conduct of those functions unless they violate a constitutional or statutory provision.* There has never been a common law duty establishing a duty of care with regard to how these various governmental bodies or officials should carry out these functions. These actions are inherent in the act of governing.[6]

And as aptly observed by the Second Circuit while applying a strict "entitlement" test to determine whether a party's interest in a land-use regulation was protectible under the Fourteenth Amendment:

> [The test] represents an acknowledgement [sic] that decisions on matters of local concern should ordinarily be made by those whom local residents select

---

[4]  Conley v. Gibson, 355 U.S. 41, 45-46 (1957). *See also* Cook & Nichol, Inc. v. The Plimsoll Club, 451 F.2d 505 (5th Cir. 1971).

[5]  Dotschay v. Nat. Mut. Ins. Co., 246 F.2d 221 (5th Cir. 1957).

[6]  Trianon Park Condo. Ass'n, Inc. v. City of Hialeah, 468 So.2d 912, 919 (Fla. 1985) (emphasis added).

>  to represent them in municipal government – not by federal courts.  It also recognizes that the Due Process Clause does not function as a general overseer of arbitrariness in state and local land-use decisions; in our federal system, that is the province of the state courts.[7]

Accordingly, the Court will address only those claims raised by the Plaintiff which allegedly violate some federal constitutional or statutory provision.

*I. Due Process Claims*[8]

The Plaintiff claims that the Defendants violated both his substantive and due process procedural rights under the Fourteenth Amendment.  Since each right implicates different kinds of constitutional protection, the Court will address each claim in turn.

"The substantive component of the Due Process Clause protects those rights that are fundamental, that is, rights that are implicit in the concept of ordered liberty."[9]  Most of the rights enumerated in the Bill of Rights, as well as certain unenumerated rights, such as the right to privacy, merit protection.[10]  If a right merits substantive due process protection, then that right is protected against certain government actions regardless of fairness of the procedures taken by the

---

[7]  Zahra v. Town of Southhold, 48 F.2d 674, 680 (2nd Cir. 1995).

[8]  The Plaintiff's deprivation of liberty to work at lawful calling, denial fo redress against government, and discriminatory licensing practices claims are actually due process claims, and therefore are not separately addressed in this Order.

[9]  McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (internal quotations and citations omitted).

[10]  Id.

government in its actions.[11]  The Supreme Court has been reluctant to extend substantive due process protection to certain unenumerated rights, and federal courts are required to exercise judicial restraint whenever asked to recognize substantive due process protection for "new" rights.[12]  Moreover, substantive rights created only by state law are not subject to substantive due process protection under the Due Process Clause because substantive due process rights are created only by the Constitution.[13]  As a result, state law based rights may be rescinded so long as the elements of procedural – not substantive – due process are observed.[14]

The denial of the Plaintiff's application for an occupational license, which would have allowed the Plaintiff to operate a retail music store in a building which he leased, is a state law based right which does not implicate any fundamental right the Plaintiff may have under the Constitution.[15]  Even if the Defendants acted arbitrarily

---

[11]   Id.

[12]   Id.

[13]   Id.

[14]   Id.

[15]   See Ammons v. Okeechobee County, 710 So.2d 641, 645 (4th DCA 1998) ("The decision to revoke an occupational permit which has been issued in violation of the law does not strike at fundamental rights under the constitution.  It therefore does not constitute a violation of substantive due process rights."); Artistic Entm't, Inc. v. City of Warner Robins, 134 Fed.Appx. 306, 309 (11th Cir. 2005) (holding, in an unpublished opinion, that the revocation of an alcohol license, a property interest created by state law, does not constitute a substantive due process violation); DeKalb Stone, Inc. v. County of DeKalb, Ga., 106 F.3d 956, 959-60 (11th Cir. 1997) (holding that land-use rights, as property rights generally, are state-created rights protected by procedural due process rather than substantive due process); Greenbriar Village, L.L.C. v.
(continued...)

and capriciously in denying the Plaintiff's occupational license application, constitutional due process is satisfied if the Defendants employed proper procedures.[16] The Court will therefore turn to the Plaintiff's procedural due process claim.

"It is axiomatic that, in general, the Constitution requires that the state provide fair procedures and an impartial decisionmaker before infringing on a person's interest in life, liberty, or property."[17]  Further, "procedural due process violations do not become complete unless and until the state refuses to provide due process."[18] Accordingly, even if the Plaintiff suffered a procedural deprivation because the hearings provided by the Defendants were flawed in some way, the Plaintiff cannot make out a procedural due process violation unless the State of Florida refused to

---

[15](...continued)
Mountain Brook, City, 345 F.3d 1258, 1264 (11th Cir. 2003) (holding that substantive due process claim does not exist where City revoked land-use permit because no interest protected by a fundamental right was deprived). In Greenbriar, the Eleventh Circuit held that "zoning decisions, as a general rule, will not usually be found by a federal court to implicate constitutional guarantees and [when federal courts review zoning decisions, they will do so] with a disinclination to sit as a zoning board of review." Id. at 1262.  In addition, the Circuit held that "non-legislative deprivations of state-created rights, which would include land-use rights, cannot support a substantive due process claim, not even if the plaintiff alleges that the government acted arbitrary and irrationally. Constitutional due process is satisfied for these deprivations when proper procedures are employed." Id. at 1263 (internal citations omitted).

[16]     See Greenbriar, 345 F.3d at 1263.

[17]     McKinney, 20 F.3d at 1561.

[18]     Id. at 1562 (internal quotations omitted).

make available a means to remedy the deprivation.[19]  Since Florida courts have the authority to remedy the deficiencies the Plaintiff complains of,[20] and since the Plaintiff has made no allegations in his Complaint that Florida courts have refused to remedy the alleged deprivation he suffered, the Plaintiff's procedural due process claim is also due to be dismissed.

*II. Deprivation of Property Without Just Compensation*

The Fifth Amendment prohibits the taking of private property for public use without just compensation.  In order for the Plaintiff to state a claim for a deprivation of property without just compensation, he must allege that the Defendants' actions – here, the denial of an occupational license – have denied him of all economically beneficial or productive use of his property, and second, that state law provides him no process for obtaining just compensation or that the process provided by the state is inadequate.[21]

---

[19]   See id. at 1563.

[20]   Id.

[21]   Agripost, Inc. v. Miami-Dade County, 195 F.3d 1225, 1231 (11th Cir. 1999); See also Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 194 (1985) (holding that respondent's taking claim was not ripe for review when procedures that state provides for obtaining just compensation were not utilized); East-Bibb Twiggs Neighborhood Ass'n v. Macon Bibb Planning & Zoning Comm'n, 896 F.2d 1264, 1266 (11th Cir. 1989) (affirming dismissal of just compensation claim of property owners who sought to enjoin county from granting a conditional use permit for operation of a landfill when they failed to seek compensation through state law procedures).

The allegations in the Plaintiff's Complaint are insufficient to state a takings claim. First, the Plaintiff alleges that because the Defendants denied him an occupational license, he was unable to operate his music retail store in a building he had rented. He does not allege that he was denied "all economically beneficial or productive use of his property." In fact, it appears from the face of the Complaint that the Plaintiff could have used his property to conduct a manufacturing business. Second, the Plaintiff has not alleged that Florida did not provide procedures for receiving just compensation or that such procedures were inadequate. Accordingly, for the foregoing reasons, the Plaintiff's takings claim is due to be dismissed.

*III. Denial of Equal Protection of the Law*

To succeed on his equal protection claim, the Plaintiff must prove that similarly situated individuals received a license, and that the Defendants intentionally discriminated against him.[22] The Plaintiff has alleged facts which show that similarly

---

[22] See E & T Realty v. Strickland, 830 F.2d 1107 (11th Cir. 1987). In Strickland, a property owner claimed that the county discriminatorily administered a sewer moratorium resolution. Specifically, the property owner claimed that the county's refusal to authorize sewer allocation for its property, while approving larger allocation for another building, violated the Equal Protection Clause of the Fourteenth Amendment. The Eleventh Circuit held that "[a] local government does not violate the equal protection clause by granting a permit to an applicant who has a nonfrivolous claim of entitlement under the pertinent legislation and by denying a permit to another applicant who is clearly unentitled to it: the two applicants are not similarly situated." Id. at 1111. In other words, if the applicants are not similarly situated, there is no equal protection violation. Secondly, the Circuit held that to prevail on the claim that the county unequally applied a facially neutral statute, a plaintiff must show intentional discrimination. Id. at 1112. On the other hand, if a plaintiff were challenging a classification created on the face of the statute, then a plaintiff would be required to show that the classification is not rationally related to a legitimate state purpose. Id. Like the property owner in Strickland, this case involves the alleged unequal
(continued...)

situated individuals -- other retail establishments -- received an occupational license, but the Plaintiff has not alleged facts which show that the Defendants intentionally discriminated against him.  "Discriminatory purpose implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker . . . selected . . . a particular course of action at least in part because of . . . its adverse effects upon an identifiable group."[23]  It is not enough for the Plaintiff to show that the Defendants applied the ordinance in an arbitrary and capricious manner -- he must still prove intentional discrimination.[24] The Plaintiff simply alleges in his Complaint that the Defendants' actions were irrational, and does not allege facts showing that the Defendants intentionally discriminated against him.  In fact, in his response to the Defendants' motion to dismiss, the Plaintiff concedes that he does not claim that his constitutional rights were violated based upon racial discrimination or some other class-based discriminatory animus, rather he claims his rights were violated because he did not receive the process he was due and because the Defendants' "fraudulent disapproval of [his] application . . . constitute

---

[22](...continued)
application of a facially neutral county ordinance to similarly situated applicants, not the challenge to a classification on the face of a statute.  Accordingly, the Plaintiff need only allege facts which show that similarly situated applicants were treated differently than he was, and he was intentionally discriminated against by the Defendants.

[23]     Id. at 1114 (internal quotations and citations omitted).

[24]     Id.

grounds for an 'arbitrary and capricious' claim."[25]  Accordingly, the Defendants' motion to dismiss with respect to this claim is due to be granted.

*IV. Neglect of Duty to Prevent Unlawful Acts*

The Plaintiff claims that "the Defendants' neglect of their duty to prevent the wrongful acts specified and complained herein, worked by fraud, with reckless disregard of the Plaintiff's rights and wellbeing [sic]" violated his rights under the Fourteenth Amendment, § 1981, § 1983, and § 1986.

§ 1986 provides in relevant part:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . .

§ 1986 claims are therefore derivative of § 1985 violations, and the text of § 1986 requires the existence of a § 1985 conspiracy.[26]  To prove a conspiracy under § 1985, the Plaintiff must allege and prove the following: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either

---

[25]  Doc. 57, Plaintiff's Response, pg. 7-9.

[26]  Park v. City of Atlanta, 120 F.3d 1157, 1159-60 (11th Cir. 1997).

injured in his person or property or deprived of any right or privilege of a citizen of the United States."[27]  "More specifically, the second element requires a showing of some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."[28]  As previously discussed, the Plaintiff has failed to make any allegations in his Complaint that the Defendants discriminated against him based on his race or some other classification.  Accordingly, the Plaintiff's claim under § 1986 is due to be dismissed.

*V. RICO Claim*

In support of Counts Nine through Twenty-Eight, the Plaintiff contends that the Defendants' violation of various federal and state criminal laws support his civil claim brought pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1964(c).

18 U.S.C. § 1964(c) provides in relevant part: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit . . ."  § 1962(a) makes it unlawful for any person to invest in an enterprise using any income from a pattern of racketeering activity.  § 1962(b) makes it unlawful for any person to acquire or

---

[27] United Bhd. of Carpenters & Joiners of America, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983).

[28] Lucero, 954 F.2d at 628 (internal quotations and citations omitted).

maintain an interest in or control of any enterprise through a pattern of racketeering activity. § 1962(c) prohibits any person from conducting or participating in the conduct of an enterprise's affairs through a pattern of racketeering activity. And a conspiracy to violate any of these subsections is unlawful under § 1962(d). So for a plaintiff to recover civil damages for a violation of § 1962, he must prove a pattern of racketeering activity on the part of the Defendants, which is defined in § 1961(5) as "at least two acts of racketeering activity," the last of which must have occurred within ten years after the commission of a prior act of racketeering activity. Racketeering activity is broadly defined as "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year."[29] Racketeering activity is also defined as "any act which is indictable" under any of the specific federal criminal offenses listed in the statute.[30] Conviction of an offense is not necessary to maintain an action under the civil provisions of RICO, the Plaintiff must only prove by a preponderance of the evidence that the predicate acts occurred.[31]

After a thorough review of the Plaintiff's Second Amended Complaint, the Court concludes that the Plaintiff has not alleged sufficient facts to show that the

---

[29] 18 U.S.C. § 1961(1)(A).

[30] Id.

[31] Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 488-93 (1985).

Defendants engaged in a series of criminal offenses which would constitute a "pattern of racketeering activity" in violation of RICO.  Moreover, to succeed on a RICO claim, the Plaintiff must show that he suffered a concrete financial injury to his business or property which was caused by the Defendants' RICO violation, and to be denied an occupational license cannot be said to be such an injury.[32]  Accordingly, the Plaintiff's RICO claim is due to be dismissed.

## Conclusion

Upon due consideration and for the forgoing reasons, it is ordered that:

(1) The Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint is GRANTED in all respects;

(2) the Plaintiff's Second Amended Complaint is DISMISSED; and

(3) the Clerk is directed to enter judgment accordingly, terminate any pending motions, and close the file in this matter.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 15th day of December, 2005.

Copies to:    Counsel of Record
              *Pro Se* Plaintiff
              Maurya McSheehy

UNITED STATES DISTRICT JUDGE

---

[32] See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991) (holding that to state claim under 18 U.S.C. § 1964(c), a plaintiff in a RICO action must prove RICO violation, injury to business or property, and that the violation caused the injury); Oscar v. Univ. Students Co-op. Ass'n, 965 F.2d 783 (9th Cir. 1992) (" showing of 'injury' requires proof of concrete financial loss, and not mere 'injury to a valuable intangible property interest'").

16